**Jason R. MOULTON, Plaintiff,**

v.

**Carla DeSUE, Amanda Mixon, Charles Hendrix, Lance Hollingsworth and Gordon Smith, Defendants.**

**Case No. 3:11–cv–382–J–37JBT.**

United States District Court, M.D. Florida, Jacksonville Division.

Oct. 16, 2012.

---

Daniel M. Soloway, Soloway Law Firm, PA, Pensacola, FL, Jeannette M. Andrews, Joe Longfellow, III, Andrews, Crabtree, Knox & Andrews, LLP, Tallahassee, FL, Deborah I. Mitchell, Debeaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, FL, for Plaintiff.

Jeannette M. Andrews, Joe Longfellow, III, Andrews, Crabtree, Knox & Andrews, LLP, Tallahassee, FL, Deborah I. Mitchell, Debeaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, FL, for Defendants.

## ORDER

ROY B. DALTON JR., District Judge.

This cause is before the Court on the following motions:

1. Defendant Charles Hendrix's ("Hendrix") Motion for Summary Judgment (Doc. No. 71), filed on July 20, 2012;

2. Defendant Carla DeSue's ("DeSue") Motion for Summary Judgment (Doc. No. 76), filed on July 20, 2012;

3. Defendant Gordon Smith's ("Sheriff") Motion for Summary Judgment (Doc. No. 77), filed on July 20, 2012;

4. Defendant Lance Hollingsworth's ("Hollingsworth") Motion for Summary Judgment (Doc. No. 78), filed on July 20, 2012;

5. Defendant Amanda Mixon's ("Mixon") Motion for Summary Judgment (Doc. No. 79), filed on July 20, 2012; and

6. Plaintiff's Motion to Strike Defendants DeSue, Hollingsworth, and Mixon's Argument Regarding Medical Causation Raised for the First Time in These Defendants' Reply Briefs or in the Alternative, Motion for Leave to Amend Answer Brief (Doc. No. 118), filed on October 1, 2012.

On September 7, 2012, Plaintiff, Jason R. Moulton, filed an omnibus response (Doc. No. 109) to Hendrix's (Doc. No. 71), DeSue's (Doc. No. 76), Mixon's (Doc. No. 79), and Hollingsworth's (Doc. No. 78) motions for summary judgment. That same day, he filed a separate response to the Sheriff's motion for summary judgment. (Doc. No. 108.) On September 21, 2012, all Defendants filed replies to Plaintiff's responses. (Doc. Nos. 112, 113, 114, 115, & 116.) On October 12, 2012, Defendants DeSue, Mixon, and Holingsworth filed a response to Plaintiff's motion to strike. (Doc. No. 119.) The motions are now ripe for the Court's disposition.

## BACKGROUND [1]

This action arises out of events that transpired while Tia Marie Sloama Ritch ("Ritch"), the deceased, was detained in the Bradford County Jail. On June 28, 2009, Ritch was arrested and admitted to the jail for child neglect. At the time of Ritch's booking, the then twenty-one-year-old informed the booking officer that she was pregnant. During the days that followed, the jail's movement log indicates that Ritch engaged in church and recreation activities without incident. In fact, there was no indication that she was having any pregnancy or other health-related issues until July 2 and July 3, 2009.

Early in the evening of July 2, 2009, Ritch became sick to her stomach. After having eaten dinner around 5:00 p.m. she ran to the bathroom complaining of abdominal pain. Because she was assigned the top bunk bed, her cellmate pulled Ritch's mattress to the floor where she, visibly in pain, laid down. According to the other inmates housed in the A pod with Ritch, she was holding her stomach, had vomited, and had become very pale. By 5:30 p.m. to 6:00 p.m.[2] that day, some

---

1. The following factual allegations are mostly derived from Plaintiff's Omnibus Brief in Response (Doc. No. 109, pp. 3–31), and to some extent from the deposition testimony in the record. The actual facts may be different than those stated here. *See Lee v. Ferraro,* 284 F.3d 1188, 1190 (11th Cir.2002) ("[F]acts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case. Nevertheless, for summary judgment purposes, [the] analysis must begin with a description of the facts in the light most favorable to the plaintiff.") (citation and internal quotation marks omitted).

2. The exact timing of progression of the events is highly disputed in the record. In fact, there are as many different versions of the story as there are witnesses in this case. However, the Court states the Plaintiff's version unless that version clearly diverges from the jail surveillance video.

of the inmates began repeatedly calling for help on behalf of Ritch via the intercom system at the jail.

The intercom calls from the inmates are received by the pod control officers. Working in the pod control room at that time were Officers Black and Williams. Upon Officer Williams's request, Officer DeSue, who was a central control room officer that night, went to check on Ritch at approximately 6:00 p.m. DeSue observed Ritch lying on the mattress on the floor of her cell. Ritch told DeSue that she was pregnant and was having stomach cramps. Upon receiving this information, DeSue returned to the control room to inform Sergeant Hendrix, the officer in charge. Either on her own initiative or following an order from Sergeant Hendrix, Officer DeSue called the jail nurse, Karen Kinder, who had already left the premises for the day. DeSue told the nurse that a pregnant inmate was complaining of stomach cramps, and the nurse advised to give Ritch Tylenol and a pitcher of ice water. DeSue administered the water and Tylenol to Ritch at about 6:15 p.m. This was the only time that night that anyone spoke to the jail nurse or any other medical professional regarding Ritch.

Sometime between 7:00 p.m. and 8:00 p.m., two "church ladies" who regularly visit the inmates in the A pod at the Bradford County Jail prayed for Ritch as her condition seemed to have worsened. Ms. Lisa Bruno, another inmate, describes Ritch as unresponsive around this time. (Bruno Dep. 37:8–12, June 8, 2012 ("[S]he couldn't sit up, ... she looked lethargic.... She looked yellow and she looked weak, couldn't sit up. Like she would sit—Ms. Pam would sit her up and she would fall back down.").) As the Tylenol and water proved ineffective, some of the inmates began calling for help again. Some inmates thought Ritch had an infection and that it could have been contagious. She was starting to look yellow, her lips were changing color, and she never stood back up on her feet.

Despite numerous cries for help, no correctional officer came to see Ritch until sometime between 11:00 p.m. and 1:00 a.m.[3] Because the inmates were loud and complaining, Hendrix ordered Mixon and DeSue to the A pod to see whether they should move Ritch from general population to a medical cell. Because Ritch was weak and could not stand up on her own, they helped her rise off of her mattress on the floor onto the bottom bunk bed where she laid down again. Ritch told Mixon and DeSue that she could not walk to the medical cell and that she was dizzy. Shortly after, DeSue went to Hendrix and told him that she is not sure what is wrong with Ritch and that he should go see her and decide what to do. (Hendrix Dep. 21:10–12, Mar. 20.2012.) According to a couple of inmates, Hendrix came to the A pod shouting and calling Ritch "drama queen of the year." Mixon and Hollingsworth, whose shift started at 11:00 p.m., were with him at that time. Hendrix called for a wheelchair so that they could transport Ritch to the medical cell. As Ritch could not get up on her own, Mixon and Hollingsworth helped her get up from the bottom bunk bed to the wheelchair. She was holding her stomach and crying.

---

**3.** Mixon and DeSue dispute this. They both maintain that they went to check on Ritch sometime around 7:30 p.m. According to Mixon, Ritch told her she had vomited, had nausea, and that she was pregnant. (Mixon Dep. 72:4–18, Aug. 24, 2012.) Mixon also testified that Hendrix told her Ritch had cramps when he asked her to go with DeSue to check on Ritch. (*Id.* at 97:16–22.) DeSue testified that Ritch said she was feeling better after taking Tylenol. (DeSue Dep. 120:1–7, Mar. 20, 2012.)

Sergeant Hendrix pushed the wheelchair out of Ritch's cell and inmate Bruno could see Ritch's head positioned completely back, her eyes rolled back in her head, and her feet dragging on the floor. Midway through the journey out of the A pod, Ritch slid out of the wheelchair as if she lost consciousness. The video surveillance footage shows Ritch's body collapsed in an uncontrolled manner. Mixon and Hollingsworth hurried to pick her back up to a sitting position. So that she did not slide out again, the entire way to the medical cell Mixon and Hollingsworth had to hold her legs in the air as Hendrix pushed the wheelchair. Ritch kept complaining of abdominal pain. Upon arrival to the medical cell, Ritch was picked up and thrown on the bed, her head hitting the wall.

Inmate Hammontree, housed in a medical cell next to Ritch's, was the last person to talk to her before she died. Through a vent above the sink, Hammontree was able to see and talk to Ritch from the time she was transferred into the medical cell until the early hours of July 3, 2009. Ritch complained to Hammontree that she was in a lot of pain and that she was scared and worried about her baby. Hammontree observed Ritch in a really bad shape; it was obvious she was in a lot of pain. A few times throughout the night, Hammontree witnessed Ritch make vomiting sounds. She asked Hammontree to keep talking to her because she was afraid to fall asleep. Around thirty minutes before breakfast was served, Ritch stopped talking and Hammontree thought she fell asleep. No correctional officer came to check on Ritch during the night. She was found dead around 7:30 a.m. The cause of her death was determined to be intra-abdominal bleeding caused by a ruptured ectopic pregnancy.

## PROCEDURAL BACKGROUND

On April 21, 2011, Jason R. Moulton, as Personal Representative of the Estate of Ritch, brought the present action against Correctional Officer Carla DeSue, in her individual capacity; Correctional Officer Amanda Mixon, in her individual capacity; Correctional Sergeant Charles Hendrix, in his individual capacity; Correctional Officer Lance Hollingsworth, in his individual capacity; Correctional Nurse Karen Kinder, in her individual capacity; and Sheriff Gordon Smith, in his official capacity. (Doc. No. 1, pp. 1–2.) Subsequently, on April 9, 2012, Plaintiff filed a Stipulation of Dismissal as to his claims against Karen Kinder. (Doc. No. 36.)

This case is now before the Court on five separate motions for summary judgment filed by the remaining Defendants in this action. Also before the Court is Plaintiff's Motion to Strike Defendants DeSue, Hollingsworth, and Mixon's Argument Regarding Medical Causation Raised for the First Time in These Defendants' Reply Briefs or in the Alternative, Motion for Leave to Amend Answer Brief (Doc. No. 118), filed on October 1, 2012. The Court now turns to these motions.

## STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap,* 559 F.3d 1212, 1216 (11th Cir.2009) (citing *Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1356 (11th Cir.2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604,

608 (11th Cir.1991). Evidence is reviewed in the light most favorable to the non-moving party. *Fennell,* 559 F.3d at 1216 (citing *Forman,* 509 F.3d at 1356). A moving party discharges its burden by showing that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir.2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir.2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985) (stating "conclusory allegations without specific supporting facts have no probative value"). This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir.1990). "[I]f factual issues are present, the [C]ourt must deny the motion and proceed to trial." *Id.* (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983)).

## ANALYSIS

■ Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "Section 1983 is merely a vehicle by which to bring these suits; it does not create any substantive federal rights," and "[t]herefore, the plaintiff must point to a specific federal right that the defendant violated." *Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1299 (11th Cir.2007) (internal citation omitted). "To state a claim under ... § 1983, a plaintiff must allege that (1) the defendant deprived him [or her] of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." *Richardson v. Johnson,* 598 F.3d 734, 737 (11th Cir.2010) (citing *U.S. Steel, LLC v. Tieco, Inc.,* 261 F.3d 1275, 1288 (11th Cir.2001); *Arrington v. Cobb Cnty.,* 139 F.3d 865, 872 (11th Cir.1998)).

### A. Hendrix's, Mixon's, DeSue's, and Hollingsworth's Motions for Summary Judgment (Doc. Nos. 71, 76, 78 & 79)

In their respective motions, Hendrix, Mixon, DeSue, and Hollingsworth (in this section, collectively "Defendants") move for summary judgment as to Count I of Plaintiff's Complaint. Count I alleges a § 1983 claim against Defendants in their individual capacities for displaying deliberate indifference to Ritch's clearly established Fourteenth Amendment[4] right to adequate medical care while in pre-trial confinement, which resulted in her death. (Doc. No. 1.)

---

4. The Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pre-trial detainees like Ritch. *Snow ex rel. Snow v. City of Citronelle, Ala.,* 420 F.3d 1262, 1268 (11th Cir.2005).

As to whether Defendants deliberately deprived Ritch of her constitutional right to medical care, Defendants argue that they lacked actual knowledge of a serious medical need. All Defendants testified that Ritch appeared healthy the night she became ill and ultimately died. They assert that there are no disputed issues of fact that would preclude entry of summary judgment in their favor on this issue.

Additionally, Defendants argue that even if the Court finds that Plaintiff presented sufficient evidence from which a reasonable jury could find a constitutional violation, qualified immunity shields them from this lawsuit as Plaintiff failed to show that such alleged violation was clearly established at the time it occurred.

In response, Plaintiff asserts that the record evidence sufficiently shows that Ritch was clearly suffering from an objectively serious medical need that even a lay person would recognize as requiring a doctor's attention. Given Ritch's obvious need for medical attention, Plaintiff argues that each of the Defendants acted with deliberate indifference when they delayed Ritch's access to medical care. Lastly, Plaintiff contends that the constitutional violation as alleged has been clearly established at the time of the incident in question; therefore, Defendants are not entitled to qualified immunity.

### 1. Did any of the Defendants Commit a Constitutional Violation?

 To prove deliberate indifference, Plaintiff must show that: (1) Ritch had a serious medical need—an objective inquiry, (2) Defendants acted with deliberate indifference to that need—a subjective inquiry, and (3) the injury was caused by Defendants' deliberate indifference.[5] *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir.2007). "A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (citation omitted). For the purposes of their motions, Defendants do not dispute that Ritch had a serious medical need, and the evidence in the record is sufficient to satisfy the objective component of the deliberate indifference inquiry. (Doc. No. 71, p. 15; Doc. No. 76, p. 9; Doc. No. 78, p. 7; Doc. No. 79, p. 8.)

 The issue presented here then is whether Defendants acted with deliberate indifference to Ritch's serious medical need. To show that Defendants acted so, for each Defendant Plaintiff must show that: (1) he or she had a subjective knowledge of a risk of serious harm; (2) he or

---

5. In a single footnote embedded in their replies to Plaintiff's omnibus response, DeSue, Hollingsworth, and Mixon for the first time argue that Plaintiff failed to establish causation. (Doc. No. 112, p. 4 n. 4; Doc. No. 113, p. 4 n. 8; Doc. No. 114, p. 4 n. 7.) This argument is not properly before the Court and therefore, no substantive analysis on this issue will be presented. The Eleventh Circuit Court of Appeals stated in *Herring v. Secretary, Dept. of Corrections*, 397 F.3d 1338 (11th Cir.2005):

arguments raised for the first time in a reply brief are not properly before a reviewing court. *United States v. Coy*, 19 F.3d 629, 632 n. 7 (11th Cir.1994) (citation omitted); *see also United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir.2002) (Court need not address issue raised for first time in reply brief), *cert. denied*, 539 U.S. 951, 123 S.Ct. 2628, 156 L.Ed.2d 643 (2003); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir.1999) (issue raised for first time in reply brief waived); *United States v. Martinez*, 83 F.3d 371, 377 n. 6 (11th Cir.1996) (declining to consider arguments raised for the first time in a reply brief).

*Id.* at 1342. Further, even if the Court were to consider that argument, the Court's decision set forth in this Order would not change.

she disregarded that risk; (3) by conduct that is more than gross negligence. *Goebert*, 510 F.3d at 1327. "Plaintiff must demonstrate that a Defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also have drawn the inference." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir.2008).

> Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Goebert*, 510 F.3d at 1327 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) (internal quotation marks omitted). For this reason, a genuine issue of material fact exists only if the record contains evidence of subjective awareness of a risk of harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference;" thus, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette*, 533 F.3d at 1331 (citation and footnote omitted). To determine whether the alleged conduct is more than grossly negligent, the Eleventh Circuit considers the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay. *Goebert*, 510 F.3d at 1327 (citation omitted).

### a. *Defendants Hendrix, DeSue, and Mixon* [6]

■ Viewing the facts in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could conceivably find that Defendants Hendrix, DeSue, and Mixon were deliberately indifferent to the serious medical needs of Ritch. Specifically, Ritch's condition was such that any lay person would easily recognize a serious medical need and the necessity for a doctor's attention. All three Defendants knew that Ritch was pregnant; that she was complaining of abdominal pain and vomiting from about 5:00 p.m. until her transfer to the medical cell around 1:00 a.m.; that other inmates were calling for help through the intercom system over a period of a few hours; and that, although they dispute this, she looked obviously ill and weak. These facts, when taken in the light most favorable to Plaintiff, could lead a reasonable jury to conclude that Ritch needed immediate medical care.

The record, when viewed in the light most favorable to Plaintiff, shows that all three Defendants disregarded this risk as no call to a doctor, rescue, or the jail nurse—other than the one around 6:00 p.m.—was ever made on behalf of Ritch. Defendants' decision to move Ritch to a medical cell was not for medical reasons. Instead, the record indicates that she was moved so that the other inmates would quiet down and go to sleep. This, coupled with Defendants' deposition testimony, strongly suggests that Defendants denied Ritch medical care because they believed she was faking her condition.

In her deposition, DeSue acknowledged that a miscarriage would be considered a medical emergency. (DeSue Dep. 83:19–

---

**6.** Although each Defendant's knowledge is judged separately, in this portion of the analysis the Court groups Defendants Hendrix, DeSue, and Mixon together as the record taken in the light most favorable to Plaintiff reveals that the three Defendants were aware of the substantially identical facts.

25, Mar. 20, 2012.) But, she said, inmates complain of something all the time and often exaggerate their pain. (*Id.* at 39:24–40:23.) When Ritch told Mixon and DeSue that she could not walk to the medical cell, DeSue testified that she believed Ritch could physically get up by herself, but that she did not want to leave her cell. (*Id.* at 142:2–11 (stating that Ritch was just wanting to lay in there, which is not abnormal because inmates lay around every day all day).)

Furthermore, Hendrix acknowledged that "the nurse always said if [the inmates are] pregnant and we know they're pregnant and they complain of stomach cramps, then figure you're pretty much going to call rescue, that's what I've been advised." (Hendrix Dep. 99:1–5); *see also* 110:1–4 ("[I]f [pregnant inmates] complain ... if we can't reach the nurse, we're supposed to send them out by rescue.") Yet, despite being faced with a pregnant inmate making those exact complaints, Hendrix failed to call rescue and called Ritch a "drama queen of the year" instead.

Mixon also made statements that, when read in the light most favorable to Plaintiff, show that she thought Ritch was faking her pain. Mixon testified that when Ritch slipped out of the wheelchair, it appeared deliberate. (Mixon Dep. 171:12–16 ("She slipped out of the wheelchair. It appeared deliberate to me.... It appeared to me that she arched her back deliberately to push herself out.").)

Accordingly, there is a genuine issue as to whether the Defendants' failure to call rescue constituted more than grossly negligent disregard of the substantial risk of a serious harm. Viewed in the light most favorable to Plaintiff, their deliberate decision to disbelieve Ritch's and other inmates' complaints and to withhold medical care could amount to more than grossly negligent deliberate indifference to Ritch's constitutional right to medical care.

### b. Defendant Hollingsworth

■ Viewing the facts in the light most favorable to Plaintiff, Hollingsworth was aware of these facts: (1) Hendrix had ordered that Ritch be transferred into the medical cell; (2) Hollingsworth helped during the transfer; (3) Hollingsworth knew that Ritch had vomited earlier in the night; and (4) Ritch slid out of the wheelchair because, although he disputes this, she was visibly weak and in pain. Hollingsworth's shift began at 11:00 p.m. on July 2, 2009. There is no evidence showing that Hollingsworth knew that Ritch was pregnant. In fact, Hollingsworth testified that other than knowing that she had vomited earlier that night, he did not know anything else. Hollingsworth also stated that he does not recall receiving any intercom calls made to the pod control regarding Ritch.

Although a much closer call for Hollingsworth than for Hendrix, Mixon, and DeSue, the Court concludes that a reasonable jury could conceivably find that Hollingsworth was deliberately indifferent to the serious medical needs of Ritch. Even absent any evidence demonstrating that Hollingsworth knew that Ritch was pregnant, a reasonable jury could find that Ritch's condition immediately prior, during, and after her transfer to the medical cell was such that any lay person would easily recognize a serious medical need and the necessity for a doctor's attention. Although Hollingsworth testified that he does not recall receiving any intercom calls regarding Ritch, it is undisputed in the record that he was assigned to the pod control room during his shift and that intercom calls were indeed made to the pod control. From this circumstantial evidence, a reasonable jury could conclude that he knew of Ritch's serious medical need.

As to whether he deliberately disregarded that need, the Court finds there is a genuine issue of material fact that precludes entry of summary judgment. Hollingsworth did not call rescue and there is no evidence that he did anything else to meet Ritch's need.[7] As did Hendrix, Mixon, and DeSue, Hollingsworth also stated that he believed Ritch was faking her condition. (*See* Hollingsworth Dep. 59:5–12 (referring to Ritch's sliding out of the wheelchair, Hollingsworth stated that Ritch got out of the wheelchair because she did not want to go to the medical cell, and that Mixon and he had to hold her legs so that she did not purposefully keep her feet under the wheelchair).) Without any evidence justifying such disbelief of Ritch's medical condition, this could also lead a reasonable jury to find that he deliberately disregarded Ritch's serious medical need. In light of these facts, the Court concludes that there are genuine issues of material fact as to whether Hollingsworth exhibited behavior that could be found to have deprived Ritch of her constitutional right to medical care.

## 2. Are any of the Defendants Entitled to Qualified Immunity?

■ The Court now addresses whether Hendrix, Mixon, DeSue, and Hollingsworth are entitled to qualified immunity. "The doctrine of qualified immunity protects public officials to some extent from lawsuits against them in their individual capacities." *Goebert*, 510 F.3d at 1329 (citation omitted). "To claim qualified immunity, a defendant official must first show that his allegedly wrongful act or omission occurred while he was engaged in a discretionary duty." *Id.* Here, it is un-disputed that all Defendants engaged in discretionary duties. The burden then shifts to Plaintiff to prove that Defendants are not entitled to qualified immunity. *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1157 (11th Cir.2010).

To do so, [Plaintiff] must meet the two-part standard recently reaffirmed by the Supreme Court [of the United States] in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). First, [Plaintiff] must allege facts that establish that the officer violated [Ritch's] constitutional rights; and second, [Plaintiff] must also show that the right involved was "clearly established" at the time of the putative misconduct. *See id.* at 232, 129 S.Ct. 808 This inquiry is "undertaken in light of the specific context of the case, not as a broad general proposition." *Lee* [*v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002) ]. In *Pearson*, the Supreme Court concluded that a court may assess these factors in any order. 555 U.S. at 236, 129 S.Ct. 808. . . .

*Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir.2012). Since the Court determined that a reasonable jury could find that there was a constitutional violation as to each Defendant, the question becomes whether Plaintiff has sufficiently asserted that the Defendants' alleged acts or omissions "violate clearly established . . . constitutional rights." *Goebert*, 510 F.3d at 1329 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (internal quotation marks omitted).

■ "The standard for determining whether a right is well-established for purposes of qualified immunity is whether the

---

7. Although disputed by inmate Hammontree's testimony, Hollingsworth testified that Ritch called him around 4:20 a.m. on July 3, 2012, asking for medicine for her stomachache. (Hollingsworth Dep. 61:4–9, 63:20–64:6, Mar. 21, 2012.) He said that he did not have any medicine for her and that she would need to wait until the nurse came in the morning. (*Id.* at 63:20–64:6.)

right violated is one about which a reasonable person would have known." *Id.* (citation and internal quotation marks omitted). It is well established that the Eleventh Circuit "recognize[s] three sources of law that would put a government official on notice of ... constitutional rights: specific constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Id.* at 1330 (citation omitted). "Decisions of the ... Supreme Court [of the United States], the Eleventh Circuit, and the Supreme Court of Florida can clearly establish law in this jurisdiction." *Lelieve v. Oroso,* 846 F.Supp.2d 1294, 1301 (S.D.Fla.2012).

Here there are principles of law enunciated in relevant decisions and factually similar case previously decided which clearly establish that Defendants' alleged conduct amounted to deliberate indifference. The Supreme Court of the United States established that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Goebert,* 510 F.3d at 1330 (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (internal quotation marks omitted). The Eleventh Circuit has held that "[a]n official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay." *Bozeman v. Orum,* 422 F.3d 1265, 1273 (11th Cir.2005) (quoting *Lancaster v. Monroe Cnty., Ala.,* 116 F.3d 1419, 1425 (11th Cir.

1997)) (internal quotation marks omitted). Even so,

> [t]his general statement of law ordinarily does not preclude qualified immunity in cases involving a delay in medical treatment for a serious injury. The cases are highly fact-specific and involve an array of circumstances pertinent to just what kind of notice is imputed to a government official and to the constitutional adequacy of what was done to help and when. Most cases in which deliberate indifference is asserted are far from obvious violations of the Constitution.

*Id.* at 1274.

■ Here, one specific case is sufficiently similar to have put Defendants on notice that their alleged actions or inactions violated Ritch's constitutional right to medical care. In *Kimbell ex rel. Liddell v. Clayton County,* Case No: 1:03–cv–2910, ECF No. 189 (N.D.Ga. Sept. 27, 2005), *aff'd in* 170 Fed.Appx. 663 (11th Cir.2006), the court held that plaintiff submitted sufficient evidence so as to create genuine issues of material fact on whether correctional officers deprived the female prisoner of her constitutional right to medical care by delaying her transfer to a hospital. Quite strikingly, that female inmate also died of intra-abdominal bleeding caused by a ruptured ectopic pregnancy. There, the facts, presented in the light most favorable to that plaintiff, are strikingly similar to the facts viewed in the light most favorable to the Plaintiff here. The Eleventh Circuit affirmed the decision, albeit in an unpublished opinion, finding that the district court was correct to conclude that genuine issue of material fact precluded summary judgment and that the constitutional right alleged is clearly established.[8] As here,

---

**8.** After its independent survey of the relevant case law, the Court was unable to find authority for the proposition that an unpublished opinion provided insufficient notice for these purposes.

the deceased there felt ill throughout the night and she and the other inmates consistently used the intercom system to summon help. There, the deceased was actually examined by medical personnel and no correctional officer knew that she was pregnant. She was unable to stand, and had hurt her head from falling. The district court found that according to plaintiff's view of the record, a reasonable jury could find a violation of a clearly established constitutional right. In light of this case and the general principles stated above, the Court finds that the alleged constitutional right was clearly established as of July 2, 2009.

### B. DeSue's, Hollingsworth's, and Mixon's Motions for Summary Judgment as to the Issue of Punitive Damages (Doc. Nos. 76, 78, & 79)

DeSue, Hollingsworth, and Mixon also move for summary judgment on Plaintiff's claim for punitive damages. They argue that there is no evidence that they acted with ill will or malice towards inmate Ritch, or that they exhibited reckless indifference. Plaintiff disagrees and contends that granting summary judgment on this issue would invade the province of the jury. (Doc. No. 109, p. 44.)

"Punitive damages are appropriate under § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous or reckless indifference to the federally protected rights of others.'" *Wright v. Sheppard*, 919 F.2d 665, 670 (11th Cir. 1990) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). Viewed in the light most favorable to the Plaintiff, the Court finds that there is sufficient evidence in the record from which a

reasonable jury could conclude that Defendants' actions exhibited reckless indifference. Therefore, the Court denies the motions for summary judgment as to this issue.

### C. Sheriff Smith's Motion for Summary Judgment (Doc. No. 77)

Sheriff Smith moves the Court to enter summary judgment in his favor as to Count II of Plaintiff's Complaint. Count II alleges a claim against Sheriff Smith in his official capacity only. Plaintiff contends that Sheriff Smith's customs, unwritten policies, and failure to train and supervise his correctional officers caused a deprivation of Ritch's constitutional rights. (Doc. No. 1, ¶¶ 45–60.) Sheriff Smith argues that "Plaintiff cannot prove: (1) there is a causal connection between Sheriff Smith's unwritten policies and customs, and inmate Ritch's alleged deprivation of constitutional rights; and (2) Sheriff Smith knew of a need to train and supervise his correctional officers, and made a deliberate choice not to do it." (Doc. No. 77, p. 2.)

In response, Plaintiff concedes that summary judgment is due to be granted as to Count II.[9] Accordingly, the Court grants Sheriff Smith's Motion for Summary Judgment (Doc. No. 77).

### CONCLUSION

To summarize, a jury reasonably could find that: (1) Hendrix, DeSue, Mixon, and Hollingsworth knew Ritch had urgent medical needs; and (2) they were deliberately indifferent to that need. Because the law clearly established that conduct as alleged violated a pre-trial detainee's Fourteenth Amendment right to medical care, Hendrix, DeSue, Mixon, and Holl-

---

9. There only remained a dispute as to Plaintiff's claim for special damages. However, that issue is now moot pursuant to Plaintiff's responses and Defendants' replies.

ingsworth are not entitled to qualified immunity.

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that:

1. Defendant Charles Hendrix's ("Sergeant Hendrix") Motion for Summary Judgment (Doc. No. 71), filed on July 20, 2012, is **DENIED;**

2. Defendant Carla DeSue's ("Officer DeSue") Motion for Summary Judgment (Doc. No. 76), filed on July 20, 2012, is **DENIED;**

3. Defendant Gordon Smith's ("Sheriff Smith") Motion for Summary Judgment (Doc. No. 77), filed on July 20, 2012, is **GRANTED.**

4. Defendant Lance Hollingsworth's ("Officer Hollingsworth") Motion for Summary Judgment (Doc. No. 78), filed on July 20, 2012, is **DENIED;**

5. Defendant Amanda Mixon's ("Officer Mixon") Motion for Summary Judgment (Doc. No. 79), filed on July 20, 2012, is **DENIED;** and,

6. Plaintiff's Motion to Strike Defendants DeSue, Hollingsworth, and Mixon's Argument Regarding Medical Causation Raised for the First Time in These Defendants' Reply Briefs or in the Alternative, Motion for Leave to Amend Answer Brief (Doc. No. 118), filed on October 1, 2012, is **DENIED AS MOOT.**

7. The Clerk is directed to enter a final judgment providing that Plaintiff shall take nothing on his claims against Sheriff Gordon Smith, in his official capacity. The judgment shall further provide that Gordon Smith shall recover his costs of action.

8. The Clerk is directed to terminate Gordon Smith as a defendant in this case.

## ORDER

This cause is before the Court on Plaintiff's Motion to Vacate Judgment and Amend Order (Doc. 122), filed October 18, 2012. Plaintiff submits that the Court's direction to the Clerk to terminate Gordon Smith as a defendant was incorrect. (*Id.* at 2.) Plaintiff moves the Court to vacate judgment in favor of Defendant Gordon Smith, instruct the Clerk to enter final judgment in favor of Defendant Gordon Smith only as to Count II of the Complaint, and issue an amended order incorporating these changes. (*Id.* at 3.) Upon consideration, the Court agrees that claims against Defendant Gordon Smith as to Count IV of the Complaint are still pending; the decree portion of the Court's Order contained errors as to this matter. The Court hereby amends its previous Order (Doc. 120).

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. Plaintiff's Motion to Vacate Judgment and Amend Order (Doc. 122) is **GRANTED IN PART.**

2. The Clerk is directed to reinstate Gordon Smith as a defendant in the case.

3. The Clerk is directed to issue the following Amended Judgment in a Civil Case:

## AMENDED JUDGMENT IN A CIVIL CASE

**Decision by Court.** This action was decided by the Court on a motion for summary judgment.

It is **ORDERED AND ADJUDGED:**

that pursuant to the Court's Order entered on October 19, 2012, final judgment is entered that Plaintiff shall take nothing on his claims against Gordon Smith, in his

official capacity, as to Count II of the Complaint.